UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    Case No. 20-20515

    HON. MARK A. GOLDSMITH

JORDYN MERRIEWETHER,

    Defendant.
_____/

**OPINION & ORDER
REGARDING THE ABUSE OF TRUST ENHANCEMENT**

Defendant Jordyn Merriewether pleaded guilty to conspiring to steal mail matter, in violation of 18 U.S.C. § 371. Rule 11 Plea Agreement (Dkt. 55). The probation department prepared a presentence investigation report (PSR) computing Merriewether's guidelines sentence range. See PSR (Dkt. 69). In calculating Merriewether's guidelines range, the probation officer applied a 2-point enhancement to Merriewether's offense level for "Abuse of Position of Trust," pursuant to U.S.S.G. § 3B1.3, Application Note 2(A). Id. ¶ 28. Although Merriewether did not directly file any objections to the PSR, see PSR Addendum (Dkt. 70) (stating that "no objections were filed" to the PSR), she raised an objection to the abuse of trust enhancement in subsequent briefing, see Gov't Mem. at 1 n.1 (Dkt. 105) (stating that Merriewether elected to join her co-defendant, Jonathan Brooks, in his objection to the abuse of trust enhancement);[1] Def. Supp. Mem. at 1 (Dkt. 107) ("The additional enhancement of 2 points for Abuse of Trust under Guideline Sec. 3B1.3 is unwarranted."). During Merriewether's sentencing on March 10, 2022, the Court scored

---

[1] The Court recently entered an opinion overruling Brooks's objection to the application of the abuse of trust enhancement. See 3/9/22 Op. (Dkt. 110).

the abuse of trust enhancement in calculating Merriewether's sentence. The Court now sets forth its reasons for doing so.

## I. BACKGROUND

The offense occurred during the time when Merriewether, Brooks, and co-defendant Alexandra Thomas worked as letter carriers for the United States Postal Service. PSR ¶ 7. Co-defendant Andre Taylor, who did not work for the Postal Service, approached Merriewether, Brooks, and Thomas around the winter of 2019–2020 and offered to pay them if they would steal credit or debit cards from the mail and provide them to Taylor. Id. ¶¶ 13–14. Taylor paid the letter carriers approximately $75–100 per stolen credit card. Id. ¶ 15.

Taylor used postal customers' personal identifiable information—such as names and dates of birth—to submit numerous fraudulent state unemployment insurance applications to the Michigan Unemployment Insurance Agency and other state labor authorities. Id. The Government estimates that Merriewether facilitated a loss of $22,040; Brooks facilitated a loss of $63,720; and Thomas facilitated a loss of $28,800. Id. ¶¶ 18–19.

## II. ANALYSIS

Because Merriewether was a letter carrier when she committed the instant offense, the probation officer enhanced Merriewether's offense level by 2 points for "Abuse of Position of Trust," pursuant to U.S.S.G. § 3B1.3, Application Note 2(A). Id. ¶ 28. Merriewether challenges the application of this enhancement, arguing that (i) Application Note 2(A) is non-binding and (ii) the abuse of trust adjustment should not be applied to Merriewether merely because she was a mail carrier. Def. Supp. Mem. at 1–3. The Court disagrees.

Section 3B1.3 instructs that a defendant's offense level should be increased by 2 points "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner

2

that significantly facilitated the commission or concealment of the offense[.]" Application Note 1 defines "a position of public or private trust" as follows:

> [A] position of public or private trust [is] characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult). . . .

Application Note 3 further expands the definition of a position of trust:

> This adjustment also applies in a case in which the defendant provides sufficient indicia to the victim that the defendant legitimately holds a position of private or public trust when, in fact, the defendant does not. . . .

The focus of Merriewether's objection is Application Note 2(A). Pursuant to this application note, "[n]otwithstanding Application Note 1, or any other provision of this guideline," the 2-point increase for abuse of trust "shall" apply to "[a]n employee of the United States Postal Service who engages in the theft or destruction of undelivered United States mail."

Commentary (including application notes) are "binding when the guideline which the commentary interprets will bear the construction." United States v. De Leon, 810 F. App'x. 384, 386 (6th Cir. 2020) (punctuation modified). Because application notes in commentary to a guideline "may only interpret the guideline," an application note has no force if it goes beyond mere interpretation and creates a new "substantive rule." United States v. Riccardi, 989 F.3d 476, 483–484 (6th Cir. 2021). Generally, an application note that explains an undefined term in the guideline "conforms to the permissible Commentary interpretation of the Guideline." De Leon, 810 F. App'x at 386. Conversely, if an application note "modifie[s] a Guideline by expanding an existing definition," then courts are not bound to follow it. Id. For instance, in United States v. Havis, 927 F.3d 382 (6th Cir. 2019), Application Note 1 to § 4B1.2, which adds attempt crimes to

3

the list of controlled substance offenses under § 4B1.2(b), was not binding on courts because it plainly expands the definition of controlled substance offenses rather than interprets it. Id. at 386.

Riccardi is also illustrative. That case involved Application Note 3(F)(i) to § 2B1.1. Section 2B1.1 sets forth the instructions for increasing an offense level based on the amount of "loss" caused by larceny, embezzlement, or other forms of theft—without expressly defining "loss." Application Note 3(F)(i), however, states that in the case of stolen gift cards, "loss . . . shall be not less than $500." The Riccardi court concluded that "[n]o reasonable person would define the 'loss' from a stolen gift card as an automatic $500," and, therefore, Application Note 3(F)(i)'s "bright-line $500 loss amount cannot be derived from § 2B1.1 by a process reasonably described as interpretation." Riccardi, 989 F.3d at 486–487 (punctuation modified).

It bears noting that although Application Notes 1 and 3 define "position of trust," they are themselves interpretations of § 3B1.3. Thus, what matters is the interplay between Application Note 2(A) and the plain text of § 3B1.3, which does not expressly define what constitutes a position of trust. The Court, therefore, considers whether Application Note 2(A) is non-binding because it either adds to positions that qualify for § 3B1.3's adjustment (as in Havis) or conflicts with the reasonable meaning of § 3B1.3's plain text (as in Riccardi).

Unlike the application note at issue in Havis, Application Note 2(A) does not "add" to the types of positions eligible for abuse of trust adjustment. Rather, Application Note 2(A) merely "clarif[ies] that all employees of the United States Postal Service are, by the nature of their employment status, in a per se position of trust as related to the theft or destruction of undelivered United States mail." United States v. Ikechukwu, 492 F.3d 331, 334 (5th Cir. 2007) (emphasis in original).

4

Further, unlike the application note at issue in Riccardi, Application Note 2(A)'s designation of Postal Service employment as a per se position of trust is a reasonable interpretation of what qualifies as a position of trust. Because § 3B1.3 does not define what constitutes a position of "trust," courts should "give the term its ordinary meaning." Riccardi, 989 F.3d at 486 (punctuation modified). "[D]ictionaries are a good place to start to identify the range of meanings that a reasonable person would understand [the term to have]." Id. (punctuation modified). One dictionary defines "trust" to mean, among other things, "one in which confidence is placed" or a "responsible charge or office."[2] Another defines the term as a "[f]irm belief in the integrity, ability, or character of a person or thing; confidence or reliance."[3] Under either of these meanings, Application Note 2(A)'s designation of Postal Service workers is a reasonable construction of § 3B1.3's text. As the Government argues, "[l]etter carriers undoubtedly occupy a 'position of trust' vis-à-vis the public": "Postal customers send and receive all manner of confidential correspondence through the mails"; "[l]etter carriers work alone, with little oversight when they are out on their routes, and are entrusted with safeguarding and delivering the mails honestly"; and "[t]he fact that letter carriers have sole possession and control of so much valuable material on a daily basis requires the public and the postal service to have 'firm belief in the integrity or character' of these postal employees." Gov't Mem. at 5 (quoting the American Heritage Dictionary's definition of "trust").

The Court concludes that Application Note 2(A) merely "helps interpret" what constitutes a position of trust by noting that Postal Service employees are in a per se position of trust. See De

---

[2] Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/trust (last visited Mar. 10, 2022).

[3] The American Heritage Dictionary, https://www.ahdictionary.com/word/search.html?q=trust (last visited Mar. 10, 2022).

Leon, 810 F. App'x at 386 (punctuation modified, citation omitted). Therefore, Application Note 2(A) is binding on this Court. See id.

Even if Application Note 2(A) were not authoritative, the 2-point increase would still apply. As one court explained prior to the Sentencing Commission's adoption of Application Note 2(A), "it is evident that a postal carrier who delivers ordinary mail is in a position of trust":

> Millions drop mail in mailboxes every day trusting that the Postal Service will safely deliver it to the designated destination. The Postal Service places corresponding faith in those it hires to carry and deliver the mail. The Service does not routinely spy or check up on its carriers as they swiftly complete their appointed rounds. The Service does not register every piece of ordinary mail to ensure that it reaches its intended destination. Instead, it trusts carriers to resist the temptation to appropriate the contents of items of mail for themselves. Unlike the bank teller who is dutifully watched over by supervisors and who must account for all transactions at the end of the day, the postal carrier is free from surveillance when delivering mail and does not account in any way for particular pieces of ordinary mail. In sum, a Postal Service employee who delivers ordinary mail is in a quintessential position of trust.

United States v. Ajiboye, 961 F.2d 892, 895 (9th Cir. 1992).

Because Application Note 2(A) is binding, the 2-point increase applies. Alternatively, even if Application Note 2(A) were not binding, as a letter carrier, Merriewether occupied a position of trust, and, therefore, the 2-point increase still applies. Either way, the same result is achieved: Merriewether's argument that the abuse of trust enhancement is inapplicable, fails.

### III. CONCLUSION

For the foregoing reasons, the Court applied the abuse of trust enhancement.

SO ORDERED.

Dated: March 11, 2022  s/Mark A. Goldsmith
     Detroit, Michigan  MARK A. GOLDSMITH
                                                         United States District Judge